**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| MANDA FAYE WHITE, | ) | No. ED CV 13-1626-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 18, 2013, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on November 1, 2013, and November 2, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 15, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 12, 1960.  [Administrative Record ("AR") at 69, 70.]  She has some college education and past relevant work experience as an administrative assistant, care provider, clerk, executive secretary, transcriptionist, and file clerk.  [AR at 17, 183-84, 221-36, 257.]

On March 31, 2010, plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning on October 29, 2009.  [AR at 11, 157-58, 178.]  After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 11, 71-74, 81-85, 88.]  A hearing was held on January 10, 2012, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 11, 23-68.]  A medical expert ("ME") and a vocational expert ("VE") also testified.  [AR at 11, 28-40, 54-58, 62-67.]  On February 16, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from October 29, 2009, through the date of the decision.  [AR at 11-18.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 6.]  When the Appeals Council denied plaintiff's request for review on July 8, 2013, the ALJ's decision became the final decision of the Commissioner.  [AR at 1-4]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008)

(internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).   When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).   "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability

3

1   to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

2   If the claimant has a "severe" impairment or combination of impairments, the third step requires

3   the Commissioner to determine whether the impairment or combination of impairments meets or

4   equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

5   Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

6   If the claimant's impairment or combination of impairments does not meet or equal an impairment

7   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

8   sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

9   and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

10  perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

11  prima facie case of disability is established.  The Commissioner then bears the burden of

12  establishing that the claimant is not disabled, because she can perform other substantial gainful

13  work available in the national economy.  The determination of this issue comprises the fifth and

14  final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

15  n.5; Drouin, 966 F.2d at 1257.

16

17  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

18          In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful

19  activity since October 29, 2009, the alleged onset date.[1]  [AR at 13.]  At step two, the ALJ

20  concluded that plaintiff has the severe impairments of "major depressive disorder, anxiety disorder

21  not otherwise specified, and alcohol abuse."  [Id.]  At step three, the ALJ determined that plaintiff

22  does not have an impairment or a combination of impairments that meets or medically equals any

23  of the impairments in the Listings.[2]  [Id.]  The ALJ further found that plaintiff retained the residual

24

25

26          [1]   The ALJ concluded that plaintiff met the insured status requirements of the Social

27  Security Act through September 30, 2012.  [AR at 13.]

28          [2]   See 20 C.F.R. pt. 404, subpt. P, app. 1.

4

functional capacity ("RFC")[3] to perform a "full range of work at all exertional levels but with the following nonexertional limitations: simple tasks, no interaction with the public, and no tasks requiring hypervigilance." [AR at 14.]  At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 17.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff could perform, including work as a hand packager, floor waxer, and "laundry worker II." [AR at 17-18.] Accordingly, the ALJ determined that plaintiff was not under a disability from October 29, 2009, through the date of this decision.  [AR at 11, 18.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) improperly considered relevant medical evidence; and (2) improperly assessed plaintiff's credibility. [Joint Stipulation ("JS") at 3-7, 10-14.] As explained below, the Court agrees with plaintiff and remands for further proceedings.

## A.    ALJ ERRED IN HER STEP TWO ANALYSIS

Plaintiff contends that the ALJ erred in her consideration of the relevant medical evidence, with particular regard to plaintiff's headaches and "the effect of these headaches on her residual functional capacity." [JS at 3-7.]  Specifically, plaintiff asserts that the ALJ "fail[ed] to comment as to whether [p]laintiff has a medically determinable impairment of migraine headaches, and if so whether her headaches are severe" or nonsevere.  [Id.]

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520.  "The Supreme

---

[3]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Court has recognized that including a severity inquiry at the second stage of the evaluation process permits the [Commissioner] to identify efficiently those claimants whose impairments are so slight that they are unlikely to be found disabled even if the individual's age, education, and experience are considered." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)).  However, an overly stringent application of the severity requirement would violate the statute by denying benefits to claimants who meet the statutory definition of "disabled." Corrao, 20 F.3d at 949 (citing Yuckert, 482 U.S. at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis'"); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is no more than minimal effect on ability to work).

An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities.  See Corrao, 20 F.3d at 949 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); see also 20 C.F.R. §§ 404.1521(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "physical functions ...," "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting."  20 C.F.R. §§ 404.1521(b).

In her decision, the ALJ acknowledged plaintiff's allegations with regard to migraine headaches, including plaintiff's statements in a Headache Questionnaire "that she has had severe headaches since 1998 that she treated with medication and shots," and that "her last headache was in 2009."  [AR at 15; see also AR at 202-03.]  The ALJ also discussed plaintiff's hearing testimony, in which she indicated that "she has headaches one to two times a week and lies down a couple of hours to relax," and reported that "when medication does not work, she becomes agitated and needs to go to the hospital for a shot."  [AR at 15; see also AR at 46-47.]  The ALJ additionally noted medical records showing plaintiff had been treated for "hypertension and migraine headaches," and found that plaintiff's "most recent treatment records do not show [that]

1  she takes any medication for [her] headaches." [AR at 16.]  The ALJ did not find plaintiff's

2  migraine headaches to be a severe condition.  [AR at 13.]

3        Having reviewed the record, the Court finds that ALJ's step-two determination that plaintiff's

4  migraine condition is not severe is not supported by substantial evidence.  As an initial matter,

5  several of plaintiff's medical treatment notes include references suggesting that her migraine

6  condition met the de minimis threshold for the step two analysis.  See Edlund v. Massanari, 253

7  F.3d 1152, 1158 (9th Cir. 2001) ("We have defined the step-two inquiry as a de minimis screening

8  device to dispose of groundless claims.") (internal quotation marks and citation omitted).

9  Specifically, the records show that her condition was not always sufficiently managed with

10 medication, that it was worsening, and most critically that it was impacting her ability to work.

11 [See, e.g., AR at 591-92 (treatment record dated June 15, 2009, reporting that plaintiff wrote in

12 an email: "I have had a migraine for the past week.  I will be in the pharmacy today to refill my

13 Maxalt 10 mg.  As soon as they wear off, I have to take another.  If I take a day off, I get in

14 trouble."), 342-44 (treatment note dated July 22, 2009, diagnosing plaintiff with migraine

15 headache, prescribing Maxalt, noting that plaintiff reported having migraine headache "since last

16 night," and that her migraine headaches had been increasing in frequency over the previous few

17 weeks), 328-32 (treatment note dated August 12, 2009, with Axis III diagnoses including "Migraine

18 Headache," and noting that plaintiff reported missing work in part because of a migraine

19 headache).][4]

20

21        [4]   The Court observes that plaintiff's medical evidence shows that her migraine condition
       continued throughout the relevant time period, and that she consistently sought medical treatment
22     for the condition.  [See, e.g., AR at 486-87 (treatment note dated October 10, 2008, diagnosing
       plaintiff with migraine headaches, prescribing Maxalt, to be taken "at the onset of migraine
23     headache"), 455-57 (treatment note dated November 8, 2008, repeating prescription for Maxalt),
       299-300 (treatment note dated May 24, 2009, with Axis III diagnoses including "Migraine
24     Headache"), 338-39 (treatment note dated July 28, 2009, diagnosing plaintiff with migraine
       headache, prescribing Atenolol for migraines), 307-08, 319-22, 548-51, 560-66 (treatment notes
25     dating from August 19, 2009, through September 25, 2009, each repeating plaintiff's Axis III
       diagnosis of "Migraine Headache," and the prescription for Maxalt), 286-87, 289-90, 291-92, 294-
26     95, 297-98, 517-19, 523-24, 530-31, 542-44 (treatment notes dating from October 6, 2009,
       through November 30, 2009, with Axis III diagnoses including "Migraine Headache"), 272-73, 279-
27                                                                                          (continued...)

28

1    Next, the ALJ's findings that plaintiff's "last headache was in 2009," and that records "do

2    not show [that plaintiff] takes any medication" for her headaches, misstate the record.  [AR at 15-

3    16]; see Reddick, 157 F.3d at 722-24 (ALJ's "findings were unsupported by substantial evidence

4    based on the record as a whole" when "[i]n essence, the ALJ developed his evidentiary basis by

5    not fully accounting for the context of materials or all parts of the testimony and reports [and h]is

6    paraphrasing of record material is not entirely accurate regarding the content or tone of the

7    record."); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power

8    of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a

9    conclusion first, and then attempt to justify it by ignoring competent evidence in the record that

10   suggests an opposite result.") (citation omitted).  For example, although plaintiff, in her Headache

11   Questionnaire, indicated that her most recent four headaches occurred in 2009 [AR at 202], and

12   the ALJ accurately reported that plaintiff's last headache was in 2009, the ALJ did not discuss the

13   portion of plaintiff's testimony in which she indicated that she tries to take her headache

14   medication early enough "to keep [headaches] from coming on."  [AR at 46; see also AR at 496

15   (instructing plaintiff to take migraine medication "at the onset of migraine headache").]  Plaintiff

16   testified that these events happen "once or twice a week," and that when they do, she still -- i.e.,

17   even at the time of the hearing, January, 2012, and even without the full onset of the headache --

18   has to lie down after taking the medication for "a couple hours" each time.  [AR at 47.]  Moreover,

19   in plaintiff's testimony, Headache Questionnaire, and in a Disability Report dated April 1, 2010,

20   plaintiff consistently asserts that the effects of her migraine condition impact her ability to engage

21   in normal daily activities for as much as several days at a time.  [See, e.g., AR at 46-47 (testimony,

22   above), 182 (Disability Report), 202-03 (Headache Questionnaire, indicating that headaches occur

23

24       [4](...continued)

25   83, 688-91, 694-98 (treatment notes dating from January 5, 2010, through February 8, 2010, with
     Axis III diagnoses including "Migraine Headache," and prescribing Maxalt), 263-64, 266-67, 584-

26   86, 633-37, 640-44, 647-50, 658-61, 667-71 (treatment notes dating from April 15, 2010, through
     October 7, 2010, with Axis III diagnoses including "Migraine Headache"), 772-77 (treatment

27   note dated November 4, 2010, diagnosing plaintiff with migraine headache, prescribing Imitrex for
     treatment of her headaches), 722-25 (treatment note dated December 13, 2010, with Axis III

28   diagnoses including "Migraine Headache").]

1  in "clusters," that they may last "up to a week" without medication, and that even with medication,

2  it can take "up to 2-3 days" before plaintiff can resume normal activities).]

3      Defendant argues that "[t]he opinions of the State agency physicians ... also supported the

4  ALJ's finding" with regard to the nonseverity of plaintiff's migraine condition.  [See JS at 8.]  "Long-

5  standing principles of administrative law require [this Court] to review the ALJ's decision based

6  on the reasoning and factual findings offered by the ALJ -- not *post hoc* rationalizations that

7  attempt to intuit what the adjudicator may have been thinking."  Bray v. Comm'r of Soc. Sec.

8  Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation omitted).

9      In short, the record as a whole suggests that the ALJ did not properly consider evidence

10  of plaintiff's migraine condition and the impact of that condition on her ability to do work in

11  determining that this condition does not meet the de minimis threshold at step two.  See Edlund,

12  253 F.3d at 1158.[5]  Remand is warranted.

13

14  **B.    SUBJECTIVE SYMPTOM TESTIMONY**

15      Plaintiff contends that the ALJ erred in considering her subjective complaints and assessing

16  her credibility.  [JS at 10-14.]

17      "To determine whether a claimant's testimony regarding subjective pain or symptoms is

18  credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028,

19  1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

20  objective medical evidence of an underlying impairment 'which could reasonably be expected to

21  produce the pain or other symptoms alleged.'"  Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d

22  341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may

23  reject the claimant's testimony about the severity of her symptoms "only upon (1) finding evidence

24  of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton v. Barnhart,

25

26      [5]    Defendant argues that, as the ALJ "properly found that [p]laintiff was not fully credible," plaintiff's own subjective statements with regard to her migraine condition do not establish the

27  severity of the condition.  [See JS at 8-9.]  The Court disagrees, and addresses the ALJ's finding with regard to plaintiff's credibility infra.

28

331 F.3d 1030, 1040 (9th Cir. 2003).  Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c).

Where, as here, the ALJ did not find "affirmative evidence" of malingering[6] [see, generally, AR at 11-18], the ALJ's reasons for rejecting a claimant's credibility must be clear and convincing. See Benton, 331 F.3d at 1040 (Without finding evidence of malingering, the ALJ can reject claimant's testimony only by "expressing clear and convincing reasons for doing so.").  "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (internal quotation marks and citation omitted); Berry, 622 F.3d at 1234 (same).  The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (internal quotation marks and citation omitted).  A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Id. at 346.  As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

In a Headache Questionnaire dated May 23, 2010, plaintiff indicated that she began having severe headaches in 1998, and that she continues to experience them "[i]n clusters when [she is] extremely stressed or when [her] blood pressure is high." [AR at 202.] She reported that her four most recent headaches occurred in 2009, and that her headaches last "up to a week." [Id.] She wrote that her ability to resume normal activities after experiencing a headache "[d]epends" on her

---

[6]    A single reference to "malingering" appears in a medical assessment dated December 13, 2010. [AR at 723.] The reference offers no explanation or detail, and the ALJ did not refer to or rely on this reference in her opinion. [Id.; see also AR at 11-18.]

medication, but that it "sometimes [takes] up to [two to three] days." [Id.]  Plaintiff indicated that she has received shots for her migraines for "10-12" years, and has been taking Maxalt for four years, further explaining that Maxalt takes the pain away "for about 4-6 hours," and shots take the pain away but leave her "unable to work or function for at least [three] days." [AR at 203.]  She stated that she sees a physician for treatment for headaches "when needed -- once a month." [Id.]

In an Adult Function Report dated May 24, 2010, plaintiff described her daily activities, indicating that she makes coffee in the morning, checks her email and various social networking websites, feeds her dogs, naps for several hours, prepares food "like cheese/crackers toast, hamburger helper, etc.," drinks "some" wine, "[s]ometimes take[s] a shower," "sometimes just get[s] back into bed and watch[es] T.V.," and sometimes reads or "sit[s] out front" and watches people.  [AR at 208-09, 213.]  She stated that she hires people "to come over and clean up after [her three dogs]," and also that she pays people to do home repairs and yardwork.  [AR at 210-11.]  She indicated that she is able to do chores indoors, including laundry, but said it "takes a lot longer," explained that sometimes "friends [and] family will come over and encourage and help [her] do housework," and said that it takes her "days to clean the whole house." [AR at 211.]  She stated that she is able to drive and that she goes out to shop on a "bi-weekly" basis.  [AR at 212.]  Plaintiff reported that she does not have problems getting along with family, friends, neighbors, or others, that she talks on the phone, and that "sometimes people come over," but also that sometimes she does not like to be around people.  [AR at 213-14.]

At the hearing, plaintiff testified that she does not drive every day, and that she tries not to drive "that often any more." [AR at 40-41.]  She testified that she has "headaches" and that she gets "bouts of depression," such that she is afraid she will not be able to do work.  [AR at 42-43.]  She testified that she takes medication to try to prevent headaches from "coming on," and that she sometimes gets shots at the hospital for headache pain.  [AR at 46.]  Plaintiff said she is able to socialize with her friend, who lives on the same property, and also with her sister, but that sometimes she "get[s] tired of being around everybody" and goes "for a few days [without] talking to anybody." [AR at 48-49.]  She said she does not like crowds or "being around a lot of people." [AR at 49.]  Plaintiff indicated that she has "bad days" when she does not get up at all, and that

1    she has such days "a couple of times within a 30 day period for a few days at a time." [AR at 50.]

2    She specifically testified that she experienced no less than one or two bad days each month for

3    the prior year. [AR at 51.]

4         In her decision, the ALJ found plaintiff's "medically determinable impairments could

5    reasonably be expected to cause the alleged symptoms" [AR at 15], which "satisfie[s] the first

6    prong of the ALJ's inquiry regarding the credibility of [plaintiff]'s complaints." Vasquez v. Astrue,

7    572 F.3d 586, 591 (9th Cir. 2009).  The ALJ went on to find, however, that plaintiff's "statements

8    concerning the intensity, persistence and limiting effects of these symptoms are not credible to the

9    extent they are inconsistent with" the assessed RFC.  [AR at 15.]

10        The ALJ rejected plaintiff's subjective symptom testimony because she found that: (1)

11   plaintiff "is able to manage most activities of daily living independently," and is "engaged with

12   others,"[7] (2) "[a]lthough [plaintiff] currently asserts one to two headaches a week that require[] her

13   to lie down a couple hours to relax, the most recent treatment records do not show she takes any

14   medication for the headaches," and (3) "there is no indication [that] medication would not control

15   [plaintiff]'s blood pressure," and "most of the medical records show [plaintiff] has responded well

16   to medication and therapy."  [AR at 16.]

17        Having carefully reviewed the record, the Court finds that the ALJ's reasons for rejecting

18   plaintiff's credibility do not constitute clear and convincing reasons and/or are not supported by

19   substantial evidence.  First, the ALJ's rejection of plaintiff's credibility because "she is able to

20   manage most activities of daily living independently" and "is engaged with others" [AR at 15]

21   misstates the record. See Lingenfelter, 504 F.3d at 1036 (explaining that reasons for discrediting

22   plaintiff that misstate the record "provide[] no support for the [ALJ's] credibility finding[]"); Reddick,

23   _____

24        [7]    The ALJ also observed that, while plaintiff's hearing testimony "supports increased
     difficulty in social functioning and concentration, persistence, or pace," plaintiff's "ongoing alcohol
25   consumption undoubtedly hampers medical improvement."  [AR at 15.]  To the extent the ALJ
     made this comment in the context of plaintiff's daily activities, the ALJ fails to explain specifically
26   how plaintiff's "alcohol consumption" impacts plaintiff's daily activities.  Moreover, the Court
     observes that the ME, whose opinion the ALJ gave "great weight," testified, based on plaintiff's
27   testimony regarding her alcohol use, that he did not "see any need" for plaintiff to require help in
     managing her funds.  [AR at 16, 34-36.]
28

157 F.3d at 722-23.  Read as a whole, plaintiff's testimony demonstrates that her daily activities are far more limited than the ALJ implies.  Specifically, plaintiff reported that she does not clean up after her dogs, perform home repairs, or do yardwork.  [AR at 210-11.]  She also testified that, although she is able to socialize with a friend who lives on the same property as plaintiff, as well as with her sister, she does not like "being around a lot of people," and has "bad days," on which she does not get up or see others at all.  [AR at 48-51.]  Her statements also suggest that, when she does try to do some household chores like laundry, they take her a long time, and that it takes her "days to clean the whole house."  [AR at 210-11.]

Moreover, the ALJ failed to explain how plaintiff's ability to manage activities of daily living "independently" or to "engage[] with others" undermines plaintiff's allegations of disabling functional limitations.  [AR at 15-16]; see Reddick, 157 F.3d at 722 ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); Smolen v. Chater, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996) (noting that, although the ALJ can rely on a plaintiff's substantial daily activities to discredit plaintiff's testimony regarding an inability to work, "this line of reasoning has its limits[;] ... [t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits"); see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits").  Further, even if plaintiff were able to handle some household chores and other simple and occasional tasks, the ALJ failed to specify how plaintiff's ability to perform such tasks would translate into an ability to perform gainful employment.  See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ errs in failing to make a finding to the effect that ability to perform daily activities translated into the ability to perform appropriate work); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); see also Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").  Here, as in Orn, "there is neither evidence

1    to support that [plaintiff's] activities were transferable to a work setting nor proof that [plaintiff]

2    spent a substantial part of [each workday] engaged in transferable skills." Orn v. Astrue, 495 F.3d

3    625, 639 (9th Cir. 2007) (internal quotation marks and citation omitted).

4         Second, the ALJ appears to find an inconsistency between plaintiff's assertion that she

5    experiences "one to two headaches a week that require[] her to lie down a couple hours to relax,"

6    and the "most recent treatment records," which the ALJ claims "do not show she takes any

7    medication for the headaches." [AR at 16.]  The Court disagrees.  As an initial matter, and as

8    discussed supra, plaintiff's medical records reflect that plaintiff was repeatedly diagnosed with, and

9    prescribed medication for, her migraine condition.  Moreover, no medical record or opinion

10   indicates that plaintiff no longer needed medication, and to the contrary, plaintiff testified that she

11   continued to take medication for her migraine condition at the time of the hearing.  [AR at 45-46.]

12   Finally, plaintiff's most recent relevant medical records do indicate that plaintiff continues to take

13   headache medication.  A treatment record dated November 4, 2010, repeats plaintiff's assessment

14   for migraine headaches, and includes plaintiff's renewed prescription for Maxalt.  [AR at 772-73.]

15   While the record does include subsequent medical evidence for the period from February 22,

16   2011, through May 16, 2011, those records are psychiatric in nature, and do not appear to

17   address any of plaintiff's physical impairments or complaints.  [See AR at 786-89.]

18        Third, the ALJ erred to the extent that she rejected plaintiff's testimony because "most of

19   the medical records show [plaintiff] has responded well to medication and therapy," and "there is

20   no indication [that] medication would not control [plaintiff]'s blood pressure."  [AR at 16.]  As an

21   initial matter, the ALJ's finding that Dr. Griggs' medical record dated July 27, 2010, includes the

22   medical opinion that plaintiff's condition "would resolve with medication management and

23   psychological therapy" misstates the record.  [AR at 16; see AR at 792-93]; Reddick, 157 F.3d at

24   722-24; Gallant, 753 F.2d at 1456.  Specifically, Dr. Griggs' report includes a diagnosis of

25   "[d]epression major recurrent moderate," proposes "med[ication] management, psychological

26   therapy" as treatment, states that plaintiff's condition is not permanent but is expected to last "16

27   months," and provides a prognosis of "poor."  [AR at 792.]  Not only does Dr. Griggs not explicitly

28   opine that plaintiff's condition will "resolve with medication management and psychological

14

1  therapy," but he instead provides a prognosis of "poor," suggesting that he does <u>not</u> believe the
2  condition will fully "resolve with medication management" and therapy in less than 16 months.

3          Next, with regard to the ALJ's reliance on medical evidence provided by Dr. Griggs that
4  plaintiff "showed good response to medication and therapy," the ALJ does not explain why Dr.
5  Griggs's treatment notes, which reflect plaintiff's subjective statements, should be credited for
6  purposes of finding plaintiff not to be credible, but given no weight as to his opinion that plaintiff's
7  "major depression renders her unable to work."  [AR at 16; <u>see</u>, <u>e.g.</u>, 518-19 ("[Plaintiff] here for
8  follow up visit; has been stable on medications as listed below; reports that Ambien 10 mg per
9  night has been working for her").]   By not offering an explanation, the ALJ appears to have
10 selectively relied only on certain evidence in the record to reach her desired outcome.  <u>See</u>
11 <u>Carradine v. Barnhart</u>, 360 F.3d 751, 755 (7th Cir. 2004) ("[I]f she was testifying truthfully and
12 against her interest about her daily activities, why did the [ALJ] think she was lying about her
13 pain?").  The ALJ is not entitled to "pick and choose from a medical opinion, using only those parts
14 that are favorable to a finding of nondisability."  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th
15 Cir. 2004) (citing <u>Switzer v. Heckler</u>, 742 F.2d 382, 385-86 (7th Cir. 1984)).[8]

16         Moreover, the ALJ's observation that there is "no indication medication would not control
17 [plaintiff]'s blood pressure," and her conclusion that "[m]edication can control [plaintiff's]
18 hypertension," misstate the medical evidence.  [AR at 16-17]; <u>Reddick</u>, 157 F.3d at 722-24;
19 <u>Gallant</u>, 753 F.2d at 1456.  The ALJ based her findings in part on the opinion of one of the
20 nonexamining state agency medical consultants,[9] who indicated only that plaintiff's hypertension
21 was "expected to respond to prescribed treatment."  [<u>See</u> AR at 17, 394.]  Additionally, although
22 the ALJ failed to specifically cite any evidence that plaintiff's blood pressure was <u>actually</u> controlled

23 _____

24         [8]    To the extent the ALJ finds that the ME "also felt most of the medical records supported
25 good response to treatment," this statement is not supported by the record.  [<u>See</u> AR at 16, 28-40.]
   In his testimony, the ME provided a brief recapitulation of the medical records, but the Court finds
26 no statement by the ME, and the ALJ does not cite any, specifically indicating an opinion as to
27 what "most of the records" indicated with regard to plaintiff's response to treatment. [<u>Id.</u>]

28         [9]    The ALJ gave "great weight to the State agency medical consultant's physical
   assessment."  [AR at 17.]

1   by medication, the Court finds that the state consultants whose opinions she accorded great weight

2   each appeared to refer to medical records from December 23, 2009, and January 22, 2010, for

3   support for their assertions that plaintiff's blood pressure was "controlled." [See AR at 393, 407,

4   415.] Having examined those records, however, the Court cannot conclude that the ALJ's finding

5   is supported by substantial evidence.  For instance, the records indicate that plaintiff on December

6   22, 2009, was admitted to Kaiser for two days of treatment for chest pains and increased blood

7   pressure.  [See, e.g.,  AR at 606-14 (Emergency medical records from St. Mary Medical Center,

8   including transfer by ambulance to Kaiser).]  Despite a subsequent treatment record by Dr. Griggs

9   indicating that plaintiff was "on medications," including two for her blood pressure, the treatment

10  note does not suggest that the condition was controlled; rather, among other things, it includes

11  plaintiff's diagnosis of "essential hypertension," and requires plaintiff to return to the clinic for

12  follow-up treatment.  [See AR at 696-97.]  Next, with regard to the record of January 22, 2010, the

13  Court observes that this, too, is a treatment note by Dr. Griggs, again indicating that plaintiff had

14  been hospitalized in December 2009, and noting that plaintiff was "on [two] medications for blood

15  pressure." [AR at 279.]  Once again, the treatment record does not assert that plaintiff's condition

16  is "controlled," but rather includes a diagnosis for, among other things, essential hypertension.

17  [AR at 279-80.]

18       The Court also observes that the ALJ found plaintiff's blood pressure condition to be a non-

19  severe impairment.  [AR at 13.]  Although plaintiff's blood pressure may not be a disabling

20  impairment, plaintiff indicated that she has other severe impairments that prevent her from

21  engaging in normal activities.  [See, e.g., AR at 202.]  Indeed, plaintiff did not testify that her

22  symptoms were solely or primarily caused by her high blood pressure.  [See AR at 23-68.]  For

23  these reasons, the Court concludes that even if the ALJ's characterization of plaintiff's

24  hypertension condition as controlled by medication was accurate, this would not necessarily

25  discredit plaintiff as to her other disabling symptoms.

26       Finally, to the extent the ALJ generally found that plaintiff's "alleged symptoms and

27  limitations are not entirely supported by the objective medical evidence" [AR at 17], this "cannot

28  form the sole basis for discounting pain testimony."  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir.

2005).  "The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone."  Id. at 680 (citing Social Security Ruling ("SSR") 96-7p,[10] 1996 WL 374186); see also, SSR 96-7p, 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Thus, even assuming the ALJ's characterization of the medical evidence is supported by substantial evidence, the ALJ may rely upon this rationale only if any of her other reasons for discounting plaintiff's credibility is proper.  As discussed supra, they are not.

In sum, the ALJ failed to provide any clear and convincing reasons supported by substantial evidence to support her rejection of plaintiff's credibility.

## VI.

### REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ

---

[10]   "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

1   would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is

2   appropriate.  See Benecke, 379 F.3d at 593-96.

3        Here, there are outstanding issues that must be resolved before a final determination can

4   be made.  However, in an effort to expedite these proceedings and to avoid any confusion or

5   misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

6   proceedings.  First, at step two on remand the ALJ shall consider plaintiff's migraine headache

7   condition to be a "severe" condition, as the ALJ erred in concluding that it does not meet the de

8   minimis threshold.  See Edlund, 253 F.3d at 1158.  Next, because the ALJ failed to properly assess

9   plaintiff's subjective symptom testimony, the ALJ on remand shall reevaluate plaintiff's testimony.

10  Finally, if necessary, the ALJ shall reassess plaintiff's RFC and determine, at step five,[11] with the

11  assistance of a VE, whether plaintiff is capable of performing other work existing in significant

12  numbers in the national economy.

**VII.**

**CONCLUSION**

16       **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision

17  of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further

18  proceedings consistent with this Memorandum Opinion.

19       **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

20  Judgment herein on all parties or their counsel.

21       **This Memorandum Opinion and Order is not intended for publication, nor is it**

22  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 21, 2014

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

_____

[11]  Nothing in this Order is intended to disturb the ALJ's step four finding that plaintiff is unable to perform her past relevant work.  [AR at 17.]